Filed 8/25/23  P. v. Thomas CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B319910 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA475163-01) |
| v. | |
| EDWARD DONELL THOMAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Law Office of Stein and Markus, Andrew M. Stein, Joseph A. Markus, and Brentford Ferreira for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Marc A. Kohm, Theresa A. Patterson and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

William Tillett was kidnapped and murdered in 1990. After the homicide investigation went cold, investigators reopened the case and discovered Edward Donell Thomas's DNA on the pants Tillett was wearing when he was found dead. In 2022, a jury convicted Thomas of first degree murder and found true the kidnapping-murder special circumstance.

On appeal, Thomas argues the evidence was insufficient to support his murder conviction and the special circumstance finding; the trial court erred in applying the law as it existed prior to June 5, 1990; the special circumstance instructions were flawed; and Thomas's trial counsel provided ineffective assistance. For the reasons set forth below, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. Prosecution evidence

### A. Tillett's disappearance

On May 24, 1990, 11-year-old Tillett was walking home from school with several other children from his neighborhood in Inglewood. Per their usual route, the children were walking on a service road before splitting off to go to their respective homes. At some point, Tillett lagged behind the group to kick a can. When the other children looked back to see where he was, Tillett was gone.

As the children searched for Tillett, they noticed a red car driven by an African American man with a discoloration on his face, who appeared to be following them. One of the children, seven-year-old Kameron Hightower, saw the driver hold his hand out of the window as if beckoning her to approach him. As the red car turned down another street, Hightower saw the driver holding something or someone down in the passenger seat, which

she believed was a dog or a child. Scared that the red car was following them, the children ran home.

When Tillett did not arrive home from school at his usual time, his family searched for him and reported him missing.

### B. Tillett is found dead

Around 10:00 p.m. that evening, Jose Valle and Andres Ortiz were sitting in a car across the street from the driveway of Valle's residence in Hawthorne. Valle lived in a triplex that had a carport at the end of the driveway. The carport was not visible from the street.

Valle and Ortiz noticed a silver 1970 or 1980 Datsun 280ZX hatchback with its headlights off speed down the street without stopping at any stop signs. Valle was suspicious of the vehicle because he did not recognize it and the driver seemed to turn into Valle's driveway "without hesitation." The Datsun sped to the end of the driveway, made a three-point turn, and backed into the carport, where Valle's parents parked their cars and Valle stored his tools. The front passenger got out and walked to the back of the carport out of sight. Valle heard a door slam, then the Datsun pulled out of the carport and sped back toward the street. Valle and Ortiz saw two African American men in the front passenger and driver seats of the Datsun as it turned out of the driveway.

After Valle and Ortiz watched the Datsun speed down the street, again with its headlights off and without stopping at any stop signs, they checked the carport to see if anything had been stolen. They discovered Tillett between Valle's parents' cars. Tillett was curled up in the fetal position and not moving. He had been bound with duct tape, which was wrapped around

3

his ankles, wrists, and face, including over his nose and mouth. Valle ran to his residence and called the police.

### C. Paramedics' response

Paramedics responded to the scene and found Tillett was pulseless and nonresponsive. They performed a "scoop and run," picking Tillett up and putting him on a gurney to administer lifesaving measures en route to the hospital. Once in the ambulance, the paramedics cut the duct tape from Tillett's body. They were not sure what happened to the duct tape after transporting Tillett to the hospital, where he was pronounced dead. The paramedics explained that they were not concerned with the preservation of evidence but getting Tillett to the hospital as quickly as possible to give him every chance to live.

### D. Law enforcement investigation

Detective Steve Tyrell responded to the hospital. He observed heavy bruising on Tillett's right shin after emergency personnel had removed Tillett's pants. He also observed duct tape adhesive on both of Tillett's wrists. The pants still had pieces of duct tape stuck to them, and there was adhesive around the outside of the knee and ankle areas, suggesting Tillett's legs were bound together. Detective Tyrell collected the pants and booked them into evidence.

Detective Tyrell's investigation led him to suspect Thomas was involved in Tillett's kidnapping and murder. A background investigation revealed Thomas had several potential residences, including an address in Hawthorne approximately eight or nine blocks away from where Tillett was found. Detective Tyrell ultimately made contact with Thomas at an address in San Bernardino County, where a silver 1979 Datsun 280ZX hatchback was parked in the driveway. The vehicle was

4

photographed and impounded but was not tested for DNA because the technology to do so was not widely available at the time.

Valle and Ortiz identified Thomas's vehicle from the photograph as the same make, model, and color they had seen on the night they discovered Tillett's body. They described the Datsun's passenger and driver as thin African American males in their early 20's with short hair, which matched Thomas's general appearance at the time. Thomas's DMV records listed him as 21 years old, five feet eight inches tall, and weighing 145 pounds in 1990. However, Valle, Ortiz, and Hightower were unable to identify Thomas from a photo array.

### E.  Autopsy findings

The original autopsy was performed in 1990. A senior deputy medical examiner at the Los Angeles County Department of Medical Examiner-Coroner reviewed the case file and testified about the autopsy findings at trial.

Tillett's cause of death was asphyxia by probable suffocation, and the manner of death was homicide. Suffocation, which results from lack of oxygen to the blood, can result from either an external compression of the mouth and nose, i.e., smothering, or a compression of the chest that interferes with the victim's breathing mechanism, i.e., mechanical asphyxia. Death by suffocation or mechanical asphyxia can occur as quickly as 90 seconds, but is more likely to take two to three minutes. When there is a significant size disparity between the victim and the perpetrator, smothering generally leaves few to no marks on the victim.

Tillett had no defensive wounds, and there was no indication that a ligature was used on his neck. However, Tillett

had pinpoint hemorrhages around his heart, thymus gland, and linings of his lungs consistent with death by asphyxiation.  Tillett had bruising on his right leg, including a bruise sustained within a few hours of death that was approximately the size of an adult thumb.  There were also premortem injuries on Tillett's wrists consistent with being wrapped tightly with duct tape and with pressure being applied to that area.  Tillett had two premortem abrasions on the right side of his forehead and bruising under his scalp.  The bruising and lack of defensive wounds suggested Tillett was held down by a stronger and larger individual, who placed a significant amount of pressure on his legs.  Swelling on one of Tillett's nerves near his neck and spinal cord also suggested a sudden and severe movement of his neck, for example, by someone pulling back on the head to cover the nose and mouth.

### F.     Subsequent investigation and DNA testing

In 2017, an investigator was assigned to reinvestigate cold case homicides with the Inglewood Police Department and was assigned Tillett's case.  The investigator sent Tillett's pants to a crime lab for DNA testing and analysis.

The lab's director, Catherine Nguyen, found a sufficient amount of DNA on Tillett's lower right pant leg for testing and comparison.  An analysis of the test results revealed a mixture of DNA, which included a major male contributor that matched Thomas.  A major contributor is someone whose DNA appears more readily in a mixture of DNA made up of two or more people.  Nguyen explained that the period of contact, the amount of pressure of the contact, and friction could account for Thomas being the major contributor on Tillett's pants 27 years later despite the pants' storage in nonideal conditions.  She opined

6

Thomas had much more than "casual contact" with Tillett because his DNA overwhelmed all other potential contributors, including Tillett himself. She opined that Thomas's DNA was embedded in Tillett's pants as a result of "primary transfer," which occurs from direct contact, as opposed to "secondary transfer," which occurs when a person touches an item, and then a second person touches that same item, and the first person's DNA is transferred to the second person. Nguyen opined that the probability of finding another random individual that was not Thomas, who matched the major contributor's profile, was approximately 1 in 470 quadrillion.

## II. Defense evidence

Thomas introduced two exhibits into evidence— a photograph of Tillett's shirt, which was analyzed by the lab but did not have enough DNA for comparison; and the photo array from which Valle, Ortiz, and Hightower were unable to identify Thomas.

## III. Jury verdict and sentencing

An information charged Thomas with murder, along with lying-in-wait and kidnapping-murder special circumstances (Pen. Code,[1] §§ 187, subd. (a), 190.2, subds. (a)(15), (a)(17), count 1), and possession of a firearm by a felon (§ 29800, subd. (a)(1), count 2). Thomas pled not guilty to count 1 and no contest to count 2.

A jury found Thomas guilty of first degree murder and found true the kidnapping-murder special circumstance. It was unable to reach a verdict as to the lying-in-wait special

---

[1]     All further statutory references are to the Penal Code.

circumstance. Thomas was sentenced to life without the possibility of parole, plus a consecutive term of two years.

Thomas appealed.

## DISCUSSION

Thomas contends: (1) the evidence presented was insufficient as a matter of law; (2) the trial court erred in applying the law as it was prior to June 5, 1990, with respect to felony murder liability; (3) the special circumstance instruction was "completely flawed"; (4) because the evidence was insufficient to support the felony murder conviction or special circumstance finding, retrial is barred; and (5) defense counsel was ineffective by failing to advise the trial court that existing felony murder law should have applied and by failing to request a jury instruction for accessory after the fact.

As an initial matter, we find Thomas's briefing utterly deficient. His opening brief does not contain any substantive analysis applying the law to the evidence in support of his arguments, rather, it contains conclusory statements of law and fact without ever coherently connecting the two. To make matters worse, Thomas's reply brief is nearly an identical copy of his opening brief and thus fails to address any of the People's contentions raised in their respondent's brief. Based on Thomas's deficient briefing alone, we could find that Thomas waived or forfeited his arguments on appeal. (*People v. Ham* (1970) 7 Cal.App.3d 768, 783 [where point is asserted without any substantive argument, it is deemed to be without foundation and requires no discussion]; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 [if appellate contentions are not supported by substantive argument, the issues are considered waived].)

The deficiency of Thomas's counsel's briefing notwithstanding, in the interest of justice, we will consider Thomas's arguments to the extent we can decipher them.

I.    **The jury's verdict was supported by substantial evidence**

Thomas contends that his murder conviction and the special circumstance finding must be reversed because there is insufficient evidence to support the jury's verdict.

A.    **Governing law**

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Powell* (2018) 5 Cal.5th 921, 944.)

"The standard of appellate review is the same in cases in which the People rely primarily on circumstantial evidence. [Citation.] Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." '

9

[Citations.] 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' " (*People v. Bean* (1988) 46 Cal.3d 919, 932–933.)

Murder is defined as the unlawful killing of another with malice aforethought.  (§ 187, subd. (a).)  Malice may be express or implied.  (§ 188, subd. (a).)  Express malice requires an intent to kill that is unlawful because there is no justification, excuse, or mitigation for the killing recognized by law.  (*People v. Elmore* (2014) 59 Cal.4th 121, 133.)  Express malice can be shown if the perpetrator "knows to a substantial certainty that the victim's death will occur."  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)  It may be "inferred from the defendant's acts and the circumstances of the crime."  (*People v. Smith* (2005) 37 Cal.4th 733, 741.)  Under the theory of direct aiding and abetting liability for murder, the prosecution must show that the aider and abettor " 'knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' " (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.)

First degree felony murder is any kind of willful, deliberate, and premeditated killing or a killing that is committed in the perpetration of certain enumerated felonies, including kidnapping.  (§ 189, subd. (a).)  A kidnapping occurs when: (1) the defendant took, held, or detained another person by using force or by instilling reasonable fear; (2) using that force or fear, the defendant moved the other person, or made the other person move a substantial distance; and (3) the other person did not consent to the movement.  (*People v. Burney* (2009) 47 Cal.4th 203, 232.)

### B. Analysis

Thomas makes several arguments as to why the evidence was insufficient for the jury to convict him of murder and to find true the kidnapping-murder special circumstance. His arguments are meritless.

First, Thomas argues that the evidence was insufficient to support a murder conviction because his DNA on Tillett's pants was the only evidence connecting him to the crime. Thomas is wrong. In addition to DNA evidence, Valle and Ortiz saw a vehicle matching the make, model, and color of Thomas's turn into the driveway and pull into the carport, where Tillett's body was found moments later. They then identified Thomas's vehicle as the one they saw that evening in a photograph taken by Detective Tyrell outside of a residence where Detective Tyrell found Thomas. Valle and Ortiz also described the two men driving Thomas's vehicle as thin African American males in their 20's, which fit Thomas's description at the time. They also testified the vehicle's driver seemed to pull into the triplex's driveway without hesitation and speed to the back of the carport, giving the impression that the driver knew about the triplex and the carport, which was hidden from the street. This supported an inference that the driver was familiar with the area, which further implicated Thomas because there was evidence that he lived at an address eight to nine blocks away. Thus, contrary to Thomas's argument, there were additional facts to connect him to the crime.

Thomas also argues the evidence only supported the conclusion his DNA was transferred to Tillett during transit but not that he was involved in the actual killing. The fact that the evidence may support an alternative conflicting interpretation, is

11

not a basis to overturn a conviction on appeal for insufficiency of the evidence. It is for the jury and the jury alone to resolve conflicts between alternative interpretations of the evidence. (*People v. Bean, supra*, 46 Cal.3d at pp. 932–933.) In any event, Thomas ignores the DNA expert's testimony that the presence and quantity of Thomas's DNA on the pants decades later, despite their less-than-ideal storage conditions, suggested Thomas had prolonged and direct contact with Tillett. Thus, it was reasonable for the jury to reject the possibility that Thomas's DNA transferred to Tillett's pants by merely moving Tillett's body.

Next, Thomas argues there was no evidence he manually suffocated Tillett or that he held him down, because the medical examiner admitted Tillett's death by asphyxiation may have been caused by the duct tape covering Tillett's nose and mouth. Again, arguing that evidence may support two conflicting interpretations is not a basis to overturn a jury's verdict on appeal. (*People v. Bean, supra*, 46 Cal.3d at pp. 932–933.) That being said, Thomas's argument ignores the circumstantial evidence supporting a reasonable inference that he held Tillett down and smothered him or held him down, while another individual taped Tillett's nose and mouth. For example, he ignores the medical examiner's opinion Tillett was held down by someone much larger and stronger than him based on the lack of defensive wounds or other marks, combined with the severity of bruising on Tillett's wrists and legs. He also ignores the DNA evidence suggesting he had direct and prolonged contact with Tillett, combined with the fact that death by asphyxiation takes two to three minutes to accomplish. Thus, there was substantial evidence to support the theories Thomas either manually

12

suffocated Tillett or held him down while someone else taped Tillett's mouth and nose, which caused the asphyxiation.

Thomas also argues the thumb-sized bruise found on Tillett's right shin was insufficient to prove he held Tillett down. However, just because one piece of evidence is insufficient on its own to support a conviction, does not mean there is insufficient evidence to support the judgment on appeal. We review the entire record in the light most favorable to the judgment to determine whether it is supported by substantial evidence. (*People v. Powell, supra*, 5 Cal.5th at p. 944.) We do not review a single piece of circumstantial evidence to determine whether it is sufficient to establish every element of the crimes charged. Moreover, Thomas's argument ignores the significance of the bruise given its location, severity, the fact it was inflicted within hours of Tillett's death, and the presence of Thomas's DNA in that same area, which, when considered together, suggested Thomas held Tillett down in the hours before Tillett was found dead.

Thomas also argues the evidence was insufficient because "[t]here were no witness identifications nor was there any evidence about the actions that led to the murder." Although it is not entirely clear, Thomas appears to argue the evidence was insufficient because no one was able to identify Thomas in a photo array and there was no motive evidence. We are unaware of any authority (and Thomas has cited none) for the proposition that all murder convictions must be supported by eyewitness testimony identifying the defendant. Nor is motive an element of murder or a kidnapping-murder special circumstance. (See *People v. Watkins* (2012) 55 Cal.4th 999, 1029.) Thus, while eyewitness testimony and motive evidence may be helpful to a

jury, they are not prerequisites to a murder conviction or a kidnapping-murder special circumstance finding. (*Ibid.*)

To the extent Thomas argues the evidence was insufficient to prove the kidnapping-murder special circumstance, we disagree. There is no dispute Tillett was detained against his will after he failed to return home from school or that he died during that detention. Indeed, after disappearing for several hours, Tillett was found dead, bruised, bound, and had Thomas's DNA in overwhelming quantities on his pants, and in the same area where he suffered significant premortem injuries. Thus, there is substantial evidence Thomas participated in the kidnapping by either personally detaining and restraining Tillett or by aiding and abetting another individual who did so.

We note that Thomas dedicated significant portions of his briefs to discuss whether the factors identified by our Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) were supported by substantial evidence. However, those factors are only relevant to determine whether a defendant convicted of felony murder, who was not the actual killer, was a major participant in the underlying felony who acted with reckless indifference to human life. As discussed in more detail below, the jury necessarily found Thomas was either the actual killer or acted with the intent to kill, therefore, the *Banks* and *Clark* factors were immaterial to the jury's verdict.

## II. The trial court properly applied the law as it existed prior to June 5, 1990, to the extent it was favorable to Thomas

Thomas contends that the trial court erred by applying the law as it existed prior to June 5, 1990, and by failing to

retroactively apply the "profound changes" in felony murder liability resulting from the enactment of Senate Bills Nos. 775 and 1437.  Beyond this conclusory statement, the substance of Thomas's argument is unclear as his briefs do not identify the precise change in the law the trial court purportedly failed to apply.  To exacerbate matters further, Thomas's brief contains no citations to the record.  Thus, it is unclear whether Thomas is arguing instructional error, insufficiency of the evidence, or another type of error.

Given Thomas's failure to advance any coherent argument on this point, we may summarily reject it as vague, conclusory, and without foundation.  (See *People v. Narvaez* (2002) 104 CalApp.4th 1295, 1303.)  However, in the interest of justice, we will consider the merits of his argument to the extent we understand it.

## A.    Relevant proceedings

During a discussion about jury instructions, the trial court indicated that CALCRIM No. 701 should be modified to reflect the law prior to June 5, 1990, which required the jury to find Thomas had the intent to kill if it found he was not the actual killer to find true the lying-in-wait and kidnapping-murder special circumstances.  The parties agreed.

The trial court instructed the jury with CALCRIM No. 701, which read:  "If you decide that the defendant is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstance of lying in wait or murder during the commission of a kidnapping, you must also decide whether the defendant acted with the intent to kill.  [¶]  In order to prove this special circumstance of lying in wait or murder during the commission of a kidnapping for a defendant who is not

15

the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove that the defendant acted with the intent to kill.  [¶]  If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with the intent to kill for the special circumstance of lying in wait or murder during the commission of a kidnapping to be true.  If the People have not met this burden, you must find the special circumstance of lying in wait or murder during the commission of a kidnapping has not been proved true."

The trial court also instructed the jury with CALCRIM Nos. 540A and 540B.

CALCRIM 540A read:  "The defendant is charged with murder, under a theory of first degree felony murder.  [¶]  To prove that the defendant is guilty of first degree murder under this theory, the People must prove that:  [¶]  1. [t]he defendant committed kidnapping; [¶] 2. [t]he defendant intended to commit kidnapping; [¶] AND [¶] 3. [w]hile committing kidnapping, the defendant caused the death of another person.  [¶]  A person who was the actual killer may be guilty of felony murder even if the killing was unintentional, accidental, or negligent.  [¶]  To decide whether the defendant committed kidnapping, please refer to the separate instruction that I will give you on that crime.  You must apply that instruction when you decide whether the People have proved first degree murder under a theory of felony murder.  [¶] The defendant must have intended to commit the felony of kidnapping before or at the time that he caused the death.  [¶]  It is not required that the person die immediately, as long as the act causing death occurred while the defendant was committing the felony."

16

CALCRIM 540B read: "The defendant may also be guilty of murder, under a theory of felony murder, even if another person did the act that resulted in the death. I will call the other person the *perpetrator*. [¶] To prove that the defendant is guilty of first degree murder under this theory, the People must prove that: [¶] 1. [t]he defendant committed, or aided and abetted kidnapping; [¶] 2. [t]he defendant intended to commit, or intended to aid and abet the perpetrator in committing kidnapping; [¶] 3. [i]f the defendant did not personally commit kidnapping, then a perpetrator, whom the defendant was aiding and abetting, committed kidnapping; [¶] 4. [w]hile committing kidnapping, the perpetrator caused the death of another person; [¶] 5A. [t]he defendant intended to kill; [¶] AND [¶] 5B. [t]he defendant aided and abetted the perpetrator in the commission of first degree murder; [¶] OR [¶] 6A. [t]he defendant was a major participant in the kidnapping; [¶] AND [¶] 6B. [w]hen the defendant participated in the kidnapping, he acted with reckless indifference to human life. [¶] To decide whether the defendant and/or the perpetrator committed kidnapping, please refer to the separate instruction that I will give you on that crime. To decide whether the defendant aided and abetted a crime, please refer to the separate instructions that I have given you on aiding and abetting. You must apply those instructions when you decide whether the People have proved first degree murder under a theory of felony murder. [¶] The defendant must have intended to commit, or aided and abetted, the felony of kidnapping before or at the time of the death. [¶] You may not find the defendant guilty of felony murder unless all of you agree that the defendant or a perpetrator caused the death of another. You do not all need to agree, however, whether the defendant or a perpetrator caused

17

that death. A person *acts with reckless indifference to human life* when he or she knowingly engages in criminal activity that he or she knows involves a grave risk of death."

### B. Governing law

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending section 188, subdivision (a)(3), to require that all principals to murder must act with express or implied malice to be convicted of that crime, with the exception of felony murder under section 189, subdivision (e). (Stats. 2018, ch. 1015, § 2.) For a felony murder conviction under section 189, subdivision (e), Senate Bill 1437 required that the defendant be the actual killer, an aider and abettor to the murder who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3.)

Senate Bill 1437 also added a petition process for a person convicted of felony murder or murder under a natural and probable consequences theory, to petition the trial court that sentenced the petitioner, to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts. (§ 1172.6, subd. (a).) Senate Bill No. 775 expanded the petition process to include individuals convicted of "attempted murder under the natural and probable consequences doctrine." (Legis. Counsel's Dig., Sen. Bill No. 775 (2020–2021 Reg. Sess.)

18

(Senate Bill 775).)  It also allowed a person with a qualifying conviction that was not yet final to challenge the validity of that conviction on direct appeal.  (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865–866.)

With respect to the special circumstance allegations, for all murders committed prior to June 6, 1990, the People were required to prove an aider and abettor acted with intent to kill for all special circumstances.[2]  (*People v. Anderson* (1987) 43 Cal.3d 1104, 1147; see pre-June 6, 1990, § 190.2, subd. (b).)  In contrast, the current law provides that the actual killer does not have to act with an intent to kill unless the special circumstance specifically requires intent.  (§ 190.2, subd. (b).)  However, if the jury finds that the defendant is not the actual killer, the People must prove defendant was a major participant and acted with intent to kill or with reckless indifference to human life.  (§ 190.2, subd. (d); *Banks*, *supra*, 61 Cal.4th at pp. 807–809; *People v. Estrada* (1995) 11 Cal.4th 568, 571.)

**C.   Analysis**

Here, the jury instructions reflected the changes in the felony murder law after the passage of Senate Bill 1437.  To convict Thomas of felony murder, the jury was instructed that it must find he was the actual killer unless it found he was an aider and abettor who acted with the intent to kill, or was a major participant in the underlying felony who acted with reckless indifference to human life.  Thomas has not identified how this instruction was erroneous or how it failed to comply with the

---

**2**    The only exception to this rule was for special circumstances charged under section 190.2, subdivision (a)(2), in which the special circumstance was a prior murder conviction.

19

changes in the law after the enactment of Senate Bill 1437. Even assuming the instructions erroneously failed to account for the changes in felony murder law under Senate Bill 1437, Thomas cannot establish prejudice because the jury found the kidnapping-murder special circumstance true, which necessarily means they found Thomas was the actual killer or was an aider and abettor, who acted with the intent to kill as instructed by CALCRIM No. 701.

Likewise, Thomas has not explained how Senate Bill 775 applies to his case. As discussed above, Senate Bill 775 merely expanded the availability for resentencing to include individuals convicted of "attempted murder under the natural and probable consequences doctrine" and allowed individuals with qualifying convictions to challenge the validity of their convictions on direct appeal. Thomas was not charged with attempted murder, and the changes to felony murder liability under Senate Bill 1437 were properly applied during his trial. Thus, it is unclear what Thomas is arguing when he says the trial court erred in allowing the case "to proceed as if [Senate Bill] 1437 and [Senate Bill] 775 had never been enacted."

With respect to the special circumstance allegations, the jury was required to find Thomas acted with the intent to kill if he was not the actual killer. Whether this retroactive application of the law was error or not, Thomas has not and cannot demonstrate that he suffered prejudice as a result of the instruction as it narrowed the circumstances under which the jury could find the special circumstance true. Moreover, because the jury necessarily found Thomas was the actual killer or an aider and abettor who acted with the intent to kill, he cannot demonstrate that giving additional instructions, with respect to

the special circumstance on whether he was a major participant who acted with reckless disregard for human life, would have resulted in a more favorable verdict. (See *People v. Mil* (2012) 53 Cal.4th 400, 415–416.)

## III. The trial court correctly instructed the jury on murder special circumstance

Next, Thomas argues that the special circumstance instruction "was completely flawed." Again, Thomas's briefs do not elaborate how the special circumstance instruction was purportedly flawed, merely quoting language from *People v. Garcia* (2020) 46 Cal.App.5th 123 (*Garcia*) and *People v. Vang* (2022) 82 Cal.App.5th 64 (*Vang*). Based on the language Thomas quotes from *Garcia* and *Vang*, we construe his argument to be the instruction improperly allowed the jury to find true the felony murder special circumstance allegations based on general causation principles as opposed to a finding that he personally killed the victim. Thomas's argument is without merit.

### A. Additional background

As discussed above, the trial court properly instructed the jury with CALCRIM Nos. 540A and 540B for the theory of first degree felony murder, as well as CALCRIM No. 701, which required the jury to find that Thomas acted with the intent to kill if it found he was not the actual killer to find the kidnapping-murder special circumstance true.

Additionally, the trial court instructed the jury on the kidnapping-murder special circumstance with CALCRIM No. 730, which read: "The defendant is charged with the special circumstance of murder committed while engaged in the commission of kidnapping in violation of . . . section 190.2(a)(17). [¶] To prove that this special circumstance is true, the People

21

must prove that: [¶] 1. [t]he defendant committed, or aided and abetted kidnapping; [¶] 2. [t]he defendant intended to commit, or intended to aid and abet the perpetrator in committing kidnapping; [¶] 3. [i]f the defendant did not personally commit kidnapping, then a perpetrator whom the defendant was aiding and abetting before or during the killing, personally committed kidnapping; [¶] AND [¶] [t]he defendant or the person who defendant aided and abetted did an act that caused the death of another person. [¶] To decide whether the defendant or a person who the defendant aided and abetted committed kidnapping, please refer to the separate instruction that I will give you on that crime. To decide whether the defendant aided and abetted a crime, please refer to the separate instructions that I have given you on aiding and abetting. You must apply those instructions when you decide whether the People have proved this special circumstance."

During closing argument, the prosecutor argued Thomas could be guilty of murder as either the actual killer or as someone who aided and abetted the killer. The prosecutor explained that an "actual killer . . . is the person who directly committed the murder." With respect to the special circumstances, the prosecutor explained: "[I]f you find that the defendant was not the actual killer[,] you must find that the defendant acted with intent to kill."

### B.    Governing law

"In assessing a claim of instructional error, we examine the instructions as a whole. The test we apply is whether there is a reasonable likelihood the jurors would have understood the instructions in a manner that violated a defendant's rights. [Citation.] In this regard, we presume that jurors are intelligent

individuals who are capable of understanding instructions and applying them to the facts of the case before them." (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1246.)

### C. Analysis

In *Garcia, supra*, 46 Cal.App.5th 123, the defendant and his coperpetrators committed a home invasion robbery. (*Id.* at p. 129.) During the course of the robbery someone taped the victim's nose and mouth, causing him to suffocate and die. (*Id.* at p. 136.) The trial court instructed the jury with CALCRIM No. 730, requiring the prosecutor to prove defendant "did an act that caused the death of another person" during the commission of a robbery. (*Garcia*, at p. 144.) The prosecutor argued to the jury that it could find defendant was the actual killer if it found defendant gave the tape, "the instrumentality of death," to a coperpetrator. (*Id.* at p. 149.)

There, the defendant challenged the jury's felony murder special circumstance finding, arguing the jury could have found he was the actual killer if it found he committed any act in the chain of events that led to the victim's death. (*Garcia, supra*, 46 Cal.App.5th at pp. 142–143.) The court reversed the special circumstance finding, concluding the instructions combined with the prosecutor's closing argument allowed the jury to convict the defendant on an invalid legal theory. (*Id.* at pp. 155–156.) This invalid theory allowed the jury to convict the defendant if it determined he caused the victim's death, even if it did not find beyond a reasonable doubt that defendant participated in the taping of the victim's face. (*Ibid.*) The court held this theory was legally invalid because an "actual killer" must have "personally killed" the victim, not merely " 'did an act that caused the death of another person.' " (*Id.* at pp. 151, 155.)

23

In *Vang*, *supra*, 82 Cal.App.5th 64, the defendant got into an argument with his wife, and she fled in her car. (*Id.* at p. 69.) Defendant followed her, forced her to stop, and coerced her into his vehicle. (*Ibid.*) As defendant drove away, his wife jumped from the moving vehicle and died. (*Ibid.*) The trial court instructed the jury that it could find defendant guilty of first degree felony murder and find the special circumstance allegation true if it found that defendant committed a kidnapping; defendant intended to commit the kidnapping; and, while committing the kidnapping, defendant caused his wife's death. (*Ibid.*)

On appeal, defendant argued, because Senate Bill 1437 provided defendant could only be liable for felony murder if he was the actual killer, and his wife jumped from the vehicle of her own volition, his conviction for first degree felony murder with a special circumstance rested on a legally invalid theory. (*Vang*, *supra*, 82 Cal.App.5th at pp. 69, 80.) The court agreed, holding that, in light of Senate Bill 1437's intent to impose punishment commensurate with the person's culpability, the term "actual killer" was intended to limit liability for felony murder to the actual perpetrator of the killing, i.e., the person who personally committed the homicidal act. (*Vang*, at p. 88.) "In other words, the intent was to conform California law to the 'agency theory' of felony-murder liability, under which criminal culpability is restricted to deaths directly caused by the defendant or an accomplice, as distinguished from the 'proximate cause' theory of felony murder, under which a defendant is responsible for any death that proximately results from the unlawful activity." (*Ibid.*) The *Vang* court noted that the jury instructions had the same flaw as those in *Garcia*. (*Vang*, at p. 91.) They allowed the

24

jury to find defendant guilty of felony murder, and to find the special circumstance true, if it determined that defendant "caused" the victim's death based on general causation principles, even if it did not find, beyond a reasonable doubt, that he personally committed the homicidal act. (*Ibid.*)

Here, there was no possibility the jury improperly found Thomas was the actual killer based on general causation principles. The prosecutor argued Thomas was either the actual killer, or, in the alternative, that he aided and abetted the actual killer. The prosecutor explained that "actual killer" meant someone who directly committed the murder. The prosecutor never argued or even implied that Thomas could be considered an actual killer under a proximate cause theory if he committed any act in the chain of events that led to Tillett's death. Moreover, the evidence supported the conclusion Thomas had direct contact with Tillett, suggesting he was either the actual killer who personally committed the murder or that he directly aided and abetted the person who committed the murder by holding Tillett down as he was bound.

Given the evidence, instructions, and the prosecutor's closing argument, there is no possibility the jury found Thomas was the actual killer under a proximate cause theory like the juries in *Garcia* and *Vang*.

Because we find the trial court properly instructed the jury, and substantial evidence supported the murder conviction and special circumstance finding, we do not address Thomas's argument that retrial is barred under *Vang, supra*, 82 Cal.App.5th 64.

25

**IV.  Thomas was not denied effective assistance of counsel**

Lastly, Thomas argues he was denied his right to effective assistance of counsel because his counsel:  (1) failed to advise the trial court that this case should have been tried under the law existing after the enactment of Senate Bill 1437; (2) failed to request additional instructions on the factors identified in *Banks*, *supra*, 61 Cal.4th 788 and *Clark*, *supra*, 63 Cal.4th 522 with respect to whether an individual, who is not the actual killer, was a major participant in the underlying felony and acted with reckless indifference to human life for purposes of felony murder liability; and (3) failed to request a jury instruction on the lesser included offense of accessory after the fact.

" ' " 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' " ' " (*People v. Johnson* (2016) 62 Cal.4th 600, 653.)  We presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Gamache* (2010) 48 Cal.4th 347, 391.)  "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*Ibid.*)

With respect to whether defense counsel should have informed the trial court to apply the law of felony murder as it existed after the enactment of Senate Bill 1437, the jury instructions reflected the amendments in the law that required a showing that Thomas was the actual killer, or that he acted with intent to kill and aided and abetted the perpetrator in the commission of first degree murder, or that he was a major participant in the underlying felony who acted with reckless indifference to human life. Thus, there was no need for trial counsel to inform the trial court about changes in the law because the trial court properly applied the amendments.

Regarding defense counsel's failure to request the clarifying instructions on the *Banks* and *Clark* factors to determine whether Thomas was a major participant in the crime and that he acted with reckless indifference to human life, Thomas cannot show prejudice because the jury necessarily found he was the actual killer or was an aider and abettor who acted with the intent to kill. Thus, further instructions on the *Banks* and *Clark* factors would have had no effect on the jury's verdict.

With respect to trial counsel's failure to request an instruction on the crime of accessory after the fact, Thomas has not shown that he was entitled to such an instruction, or that, even if he requested the instruction, it would have been given. Being accessory after the fact to a murder is not a lesser included offense of murder. (*People v. Jennings* (2010) 50 Cal.4th 616, 668.) Thomas was not entitled to the instruction, and there is no indication that the People would have agreed to the instruction. "California law does not permit a court to instruct concerning an uncharged lesser related crime unless agreed to by both parties."

27

(*Ibid.*)  Consequently, Thomas was not denied effective assistance of counsel.

## DISPOSITION

The judgment is affirmed.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


GRIMES, J.